Tucker, P.
The declaration sets out a contract on the part of Montgomery, to locate a 1 and warrant on waste and unappropriated lands, and have the same surveyed and patented; and one of the breaches assigned is, that after located, he failed to have the lands surveyed and patented. The jury has found a verdict for 1584 dollars upon this declaration,' and, for aught we know, for the breach of failing to patent what may have been located and surveyed; which renders the paten ting a most essential ingredient in the case, even if we could disregard the general principle, that in an action upon a special contract, the contract must be proved as laid.
To the declaration, the general issue and the statute of limitations were pleaded ; and upon the last plea, the parties came to issue, at last, upon this question,—Whether at the time the action accrued, the district-of Kentucky had been erected into an independent and separate state, no wise subject to the jurisdiction of any court of Virginia ? Upon these issues, I am clearly of opinion, that the verdict in the first trial, and the judgement on the demurrer to evidence in the last, should have been given for the defendant, Montgomery. The contract proved did not bind him to have the land patented, as well as located and surveyed; nor is there evidence from which any such term in the contract could fairly have been inferred. The statement which he made to one of the witnessess, of the terms of the contract,— that he was to have one half of the land, and M'Alexander to defray all the expenses incident to surveying and patenting, refers to the terms of his compensation, which was to be one half, without any charges to him for surveying or patenting. For, in speaking of what he had been employed to do, he says nothing of patenting, but only that he was to locate. I think, therefore, on this point, the judgement was right.
*67 On the second issue, I think there can be no question, that the judgement should have been given for Montgomery. He received the warrant in 1782. The whole current of testimony goes to shew that if there was any negligence,— any breach of the contract, it must have occurred long before the year 1789, when the first act was passed for the erection of Kentucky into a state; and it was not until after November 1791, that the jurisdiction of the courts of Virginia was determined. It was not necessary, that the breach should have been five years anterior to the separation: one day before would have sufficed, for then the statute would have commenced running. Now, if the defendant be chargeable on the ground of negligence, I think it cannot be denied, that he was as guilty at the expiration of nine years from the date of the contract, as at this moment. That would have brought the breach down to August 1791; and from that date the statute would have been a bar. Indeed, if there was a cause of action, it probably accrued as early as 1784. One witness deposed, that good lands, in large quantities, in one place, could not have been procured after January 1783. Another, who was a Kentucky surveyor, after November 1783, made an entry for 10,000 acres, but of such inferiour quality, that he sold part of it for only two dollars per hundred acres. Afterwards, it seems probable, more could not be obtained. Now, the statute runs from the time the negligence occurred; as, in the case of an attorney, it is not the loss of the debt which gives the action, but the unskilfulness or negligence whereby it was ultimately lost, and the statute runs from the date of that negligence; Wilcox v. Plummer’s ex’ors, 4 Peters 172. Short v. M’Carthy, 3 Barn. & Ald. 626. 5 Eng. C. L. R. 403. Howell v. Young, 5 Barn, Cres. 259. 11 Eng. C. L. R. 219. The application of the statute, in the present instance, can be no subject of regret. The transaction is very stale; and the evidence in support of the action, very vague and inconclusive. The question how far a party is to be required, relictis omnibus negotiis, to proceed to the fulfilment of one *68 of these contracts, is not very easily answered ; and the presumption that the locator, who had an equal interest, and no expenses to incur, would not grossly neglect the concern, is very strong. Add to this, that Montgomery did not abscond from oul’ jurisdiction, but was cut off from it by an act of sovereignty, and that M’Alexander might, at any time within the last forty years, have asserted his claim in Kentucky, where the question of due diligence would have been settled by a Kentucky jury, surrounded by a cloud of Kentucky witnesses, who best knew what in those times did, and what did not, amount to due diligence in such cases. We have little reason to fear, that the rigorous principles of law will work injustice between the parties in this controversy.
The judgement is to be affirmed.